Filed 10/30/14  Leon v. Cal. Substance Abuse Treatment Facility CA5

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CRAIG LEON, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CALIFORNIA SUBSTANCE ABUSE TREATMENT FACILITY, et al. <br><br> Defendants and Respondents. | F067996 <br><br> (Super. Ct. No. 12C0066) <br><br> **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kings County.  James LaPorte, Judge.

Craig Leon, in pro. per., for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Kristin G. Hogue, Assistant Attorney General, Alberto L. Gonzalez and Jennifer Marquez, Deputy Attorneys General, for Defendants and Respondents.

-ooOoo-

Plaintiff Craig Leon appeals from a judgment entered against him on a medical malpractice claim against (1) the chief medical officer at the California Substance Abuse Treatment Facility and State Prison (CSATF) and (2) the State of California (State).

Leon challenges the trial court's order granting the State relief from a default and its order granting judgment on the pleadings for both the doctor and the State.

As to relief from default, we conclude that the attorney's declaration of fault met the requirements in Code of Civil Procedure section 473, subdivision (b)[1] and, therefore, relief was mandatory.

As to granting the State a judgment on the pleadings, we conclude it was proper because (1) the State is immune from liability for the medical claims pursuant to Government Code section 844.6 and (2) the exception set forth in Government Code section 845.6 for failures to summon immediate medical care does not apply to Leon's claims.

Lastly, the doctor was not entitled to judgment on the pleadings. In accordance with the recently filed *Sykora v. State Dept. of State Hospitals* (2014) 225 Cal.App.4th 1530 (*Sykora*), we conclude that the doctor's motion and supporting papers did not establish that Leon failed to comply with California's Government Claims Act (Gov. Code, § 810 et seq.).[2] We note that the trial court did not have the benefit of the *Sykora* decision when it considered the motion for judgment on the pleadings.

We therefore affirm the judgment as to the State and reverse the judgment as to the doctor.

## FACTS AND PROCEEDINGS

Leon, an inmate at CSATF and a self-represented litigant, made the following allegation regarding his medical condition. He suffers from various back problems, including extensive degenerative changes of the lumbar spine and a bulging disc, which

---

[1]     All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2]     This legislation was commonly referred to as the "Tort Claims Act," but in *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, the Supreme Court stated that "Government Claims Act" was a more accurate name because the legislation covers both tort and contract claims. (*Id*. at p. 742.)

can never be alleviated. His only source of relief is pain medication. Physician's assistant T. Byers discontinued Leon's medication despite being aware of Leon's medical condition. As a result, Leon suffered from debilitating pain for a month before being given inferior medication. Leon submitted the issue to Anthony Enenmoh, M.D. and was prescribed medication for only six months. Consequently, Leon must see a doctor to have his medication renewed. Dr. Nemyeke discontinued his medication even before she completed a review of his medical file to see the problems causing him pain. Also, Leon was prescribed Sertraline (Zoloft), an antidepressant that did more harm than good.

In June 2011, Leon sent a claim form to the California Victim Compensation and Government Claims Board (Claims Board) along with an affidavit for waiver of government claims filing fee. Leon used the State of California's preprinted forms. He listed the date of incident as February 27, 2011, and stated the amount of his claim was over $25,000.

The Claims Board stamped both Leon's claim form and his affidavit for a waiver of the filing fee as "received" on June 20, 2011. His claim form was assigned claim number G597898. What additional steps, if any, the Claims Board took to process Leon's paperwork is not established from the record.

In February 2012, Leon filed his complaint against the CSATF (i.e., the State), physician's assistant T. Byers, and Dr. Enenmoh. Service of the summons and complaint on the State and Dr. Enenmoh was accomplished by substitute service on F. Cote at 900 Quebec Avenue, Corcoran, California, on June 29, 2012. Service was not completed as to T. Byers, and Leon subsequently dismissed Byers from the lawsuit. Because of the dismissal, this opinion uses the term "defendants" to mean the State and Dr. Enenmoh.

On July 30, 2012, an answer was filed on behalf of Dr. Enenmoh. No answer was filed on behalf of the State.

In August 2012, Leon sent the trial court a request for entry of default against the State, which the clerk of the court erroneously rejected based on the answer filed by Dr.

Enenmoh. This error was brought to light at a September 5, 2012, case management conference and the trial court ordered Leon's request for entry of default as to the State be filed. Unbeknownst to the court, this remedy was not possible because the clerk no longer had possession of the original request. Meanwhile, on September 7, 2012, the State submitted a proposed answer and requested it be filed.

In an order dated September 18, 2012, the trial court addressed this unusual situation and the specific question of whether the State's proposed answer should be filed. The court directed Leon to submit another request for entry of default as to the State and stated that if the request was received on or before October 4, 2012, the State's proposed answer would be returned without filing.

Leon submitted another request for entry of default as to the State, which was entered by the clerk of court on October 3, 2012. Leon also filed a statement of damages stating that he sought general damages for pain, suffering and inconvenience in the amount of $25,000, the minimum for a non-limited civil case.

Less than a week later, the State filed a motion for relief from default, which was accompanied by a declaration of James C. Phillips, a Deputy Attorney General. The declaration asserted:

> "The litigation coordinator's office at the California Substance Abuse [T]reatment Facility & State prison accepted service of the summons and complaint on behalf of defendant[s] State and Enenmoh. Acting as the agent for the Office of the Attorney General, forwarded the documents with a request for representation for defendant Enenmoh only. I first became aware of the fact that service on the State had actually been accomplished, and that a default request had been submitted, at the case management conference of September 5, 2012. [¶] …[¶]

> "… When I received the summons and complaint and request for representation on behalf of defendant Enenmoh, I assumed that because there was no indication of service on the prison itself from the litigation coordinator's office that such service had not been made. In retrospect, I should have contacted the prison to inquire directly based on the probability that the Sheriff's Department would serve all defendants at the same location, not just the single named defendant."

4.

In November 2012, the trial court granted the State's motion for relief from default and directed the State's answer to be filed.

In April 2013, the defendants filed a motion for judgment on the pleadings and a request for judicial notice of the declaration of Eric Rivera, the custodian of records of the Claims Board. The contents of Rivera's declaration and the attached exhibit are described in part III.C.3, *post*. The motion asserted that (1) Leon's failure to comply with the Government Claims Act barred his lawsuit and (2) Leon failed to state a cause of action against the State based on a mandatory duty.

Leon opposed defendants' motion for judgment on the pleadings. Defendants filed a reply to Leon's opposition and a second request for judicial notice that concerned the Legislative Counsel's Digest for the 2005 amendment to Government Code section 905.2.

In May 2013, the trial court requested supplement briefing from the parties on whether the State was immune from liability pursuant to Government Code section 844.6.

In July 2013, the trial court entered a minute order stating that the motion for judgment on the pleadings was granted and directing counsel for the State to prepare the order.

On August 2, 2013, the trial court filed an order granting defendants' motion for judgment on the pleadings and judgment of dismissal. The judgment stated that Leon's lawsuit against the defendants was dismissed with prejudice.

## DISCUSSION

I.     RELIEF FROM DEFAULT PURSUANT TO SECTION 473

A.     Standard of Review

Ordinarily, a superior court's ruling on a motion for relief under section 473, subdivision (b) is reviewed on appeal for an abuse of discretion. (*Zamora v. Clayborn Contracting Group*, *Inc.* (2002) 28 Cal.4th 249, 257.) However, if the prerequisites in the mandatory relief provision exist, the trial court does not have the discretion to refuse

5.

relief. (*SJP Limited Partnership v. City of Los Angeles* (2006) 136 Cal.App.4th 511, 516.)

When appellate courts address questions of law regarding the proper interpretation of section 473, they are guided by the well-settled principle that section 473 is to be liberally construed to permit the determination of action on their merits. (*Zamora v. Clayborn Contracting Group, Inc.*, *supra*, 28 Cal.4th at p. 256.)

B.     Mandatory Relief Provision

Section 473, subdivision (b) contains both a mandatory relief provision and a discretionary relief provision. The mandatory relief provision acts as a "narrow exception to the discretionary relief provision for default judgments and dismissals. [Citation.]" (*Zamora v. Clayborn Contracting Group, Inc.*, *supra*, 28 Cal.4th at p. 257.) The mandatory relief provision states in part:

> "Notwithstanding any other requirements of this section, the court *shall*, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any (1) resulting default entered by the clerk against his or her client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against his or her client, unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect." (§ 473, subd. (b), italics added.)

The purpose of this mandatory relief provision has been identified by the California Supreme Court as alleviating the hardship on parties who lose their day in court due to an inexcusable failure to act on the part of their attorneys. (*Zamora v. Clayborn Contracting Group, Inc.*, *supra*, 28 Cal.4th at p. 257.)

C.     Application of Mandatory Relief Provisions

Here, the attorney representing the State described his faulty conduct in a declaration that stated he should have contacted the prison to inquire directly whether

defendants other than Dr. Enenmoh had been served because the Sheriff's Department probably would have attempted to serve all defendants at the same location.

Leon, citing *Don v. Cruz* (1982) 131 Cal.App.3d 695, appears to argue that the fault lies with the client and not the attorney because the litigation coordinator's office at the prison failed to inform the attorney that the State also had been served and, as a result, failed to inform the attorney that he was to represent both the State and Dr. Enenmoh in the lawsuit.

Leon's theory of fault correctly identifies the litigation coordinator's office as the source of the first mistake. However, that mistake would have had no impact if the attorney had acted diligently in the manner described in his declaration. In particular, if the attorney had inquired about service on the State, he would have learned the State had, in fact, been served and, as a result, would have filed a timely answer for both the State and Dr. Enenmoh. Under applicable law, the lawyer's fault need not be the exclusive or sole cause of the default, so long as it was a cause in fact. (*Milton v. Perceptual Development Corp.* (1997) 53 Cal.App.4th 861, 867.) Here, the attorney's failure to inquire about service on the State is one of the reasons that the default was entered, which is a sufficient causal connection for purposes of the mandatory relief provision in section 473, subdivision (b). Therefore, we reject Leon's argument that the fault of the litigation coordinator's office precludes relief based on the attorney's fault.

In summary, because the attorney declaration of fault submitted by the State complied with the requirements of the mandatory relief provision in section 473, subdivision (b), we will uphold the decision of the trial court to grant the State relief from the default.

II.     IMMUNITY OF STATE FROM MEDICAL CLAIMS

        A.     <u>Statutory Provisions</u>

The Government Claims Act provides that a public entity is not liable for an injury arising from an act or omission of the public entity or a public employee *except as*

*provided by statute*. (Gov. Code, § 815, subd. (a); *Shamsian v. Department of Conservation* (2006) 136 Cal.App.4th 621, 632.) Therefore, the question presented regarding Leon's medical claims against the State (as opposed to those against the doctor) is whether a statute authorizes the type of medical claim Leon is asserting against the State.

The two statutes relevant to this question are Government Code sections 844.6 and 845.6. The first of these statutes describes the immunity of public entities from liability for injuries to prisoners. The second restates that immunity in connection with furnishing medical care and creates a narrow exception to that immunity.

Government Code section 844.6's immunity provisions regarding injuries to prisoners state:

> "(a) Notwithstanding any other provision of this part, except as provided in this section and in Sections 814, 814.2, 845.4, and 845.6, or in Title 2.1 (commencing with Section 3500) of Part 3 of the Penal Code, a public entity is not liable for:
>
> "(1) An injury proximately caused by any prisoner.
>
> "(2) An injury to any prisoner.
>
> "(b) Nothing in this section affects the liability of a public entity under Article 1 (commencing with Section 17000) of Chapter 1 of Division 9 of the Vehicle Code.
>
> "(c) Except for an injury to a prisoner, nothing in this section prevents recovery from the public entity for an injury resulting from the dangerous condition of public property under Chapter 2 (commencing with Section 830) of this part.
>
> "(d) Nothing in this section exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission. The public entity may but is not required to pay any judgment, compromise or settlement, or may but is not required to indemnify any public employee, in any case where the public entity is immune from liability under this section; except that the public entity shall pay, as provided in Article 4 (commencing with Section 825) of Chapter 1 of this part, any judgment based on a claim against a public employee who is lawfully engaged in the practice of one of the healing arts under any law of this state for

8.

malpractice arising from an act or omission in the scope of his employment, and shall pay any compromise or settlement of a claim or action, based on such malpractice, to which the public entity has agreed."

A narrow exception to the foregoing immunity provisions is created by Government Code section 845.6, which provides in relevant part:

"Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but, except as otherwise provided by Sections 855.8 and 856 [concerning mental illness and addiction], a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care."

Government Code section 845.6 has been interpreted as creating a limited cause of action against a public entity for its employee's failure to *summon* immediate medical care and not as creating liability for malpractice in furnishing or obtaining that medical care. (*Castaneda v. Department of Corrections & Rehabilitation* (2013) 212 Cal.App.4th 1051, 1070.) We note that, despite the State's direct immunity from suit, the State is required to pay a judgment assessed against its employees for medical malpractice committed against a prisoner. (*Ibid*.; see Gov. Code, § 844.6, subd. (d).)

B.      Leon's Contentions

Leon contends that the exception contained in Government Code section 845.6 applies in this case because defendants were well aware of the fact that (1) he suffered from an incurable disease and (2) the failure to treat him would immobilize him with complete body pain. Stated in statutory terms, Leon contends the State and Dr. Enenmoh knew he was "in need of immediate medical care and [failed] to take reasonable action to summon such medical care." (Gov. Code, § 845.6.)

Leon's contention raises an issue about the scope of the exception created by Government Code section 845.6.

9.

C.     Tort of Failing to Summon Medical Care

We reject Leon's argument that his claims fall within the exception created by Government Code section 845.6 because it is well established that a medical malpractice claim is a cause of action different from a tort claim for failing to summon immediate medical care.  (*Castaneda v. Department of Corrections & Rehabilitation*, *supra*, 212 Cal.App.4th at p. 1070.)

The duty to summon medical care is fulfilled once a practitioner is present and examines the prisoner.  (*Jameson v. Desta* (2013) 215 Cal.App.4th 1144, 1173-1174.)  At that point, the practitioner is under a duty to exercise that degree of diligence, care and skill as is ordinarily possessed by other members of the profession.  (*Id*. at p. 1174.)  The practitioner's breach of this duty constitutes malpractice.  (*Ibid.*)

"A public entity has a duty to summon medical care under Govt C §845.6 but not to make sure that the medical care meets professional standards of reasonableness.  The plaintiff's remedy for inadequate care is an action against the appropriate state employees for medical malpractice."  (2 Coates, et al., Cal. Government Tort Liability Practice (Cont.Ed.Bar 4th ed. 2014) § 11.16, p. 738.)

Here, Leon's allegations about how medical practitioners dealt with his ongoing pain and medical prescriptions do not involve a failure *to summon* medical care.  Instead, those allegations concern the quality of medical care provided by the medical practitioners in the course of treating Leon's health problems.  Therefore, Leon's allegations do not fall within the scope of the exception for failures to summon medical care.  (See *Wright v. State of California* (2004) 122 Cal.App.4th 659, 671-672 [State of California and Department of Corrections held immune from liability for prisoner's causes of action for intentional infliction of emotional distress and negligence arising from alleged medical malpractice and failure to furnish medical care]; see also, *Lawson v. Superior Court* (2010) 180 Cal.App.4th 1372, 1385 [allegations that prisoner was deprived of medication did not trigger liability under Gov. Code, § 845.6].)

10.

It follows that the trial court correctly granted the State's motion for judgment on the pleadings based on the State's immunity to Leon's medical claims. Leon's remedy for the inadequate medical care is limited to an action against the appropriate state employees.

III.     CLAIM PRESENTATION AND FILING FEE REQUIREMENTS

        A.     Contentions of the Parties

The trial court dismissed Leon's claims against Dr. Enenmoh because Leon "failed to comply with the California Tort Claims Act by failing to pay the required filing fee."

Leon does not contend he paid the filing fee. Instead, Leon contends he timely filed a claim form with the Claims Board and submitted a request for a waiver of the filing fee and, as a result, substantially complied with the claims presentation requirement. Leon argues that the Board was capable of providing him with notice of the deficiency in his fee waiver form and, indeed, had provided other inmates with letters warning them of similar deficiencies, yet the Board chose not to warn him. Leon contends, in effect, that the Board's failure to notify him of the deficiency in the presentation of his claim operated as a waiver of any defect in his paperwork pursuant to Government Code section 911.

Dr. Enenmoh contends that (1) Government Code section 910.8 does not require the Board to notify inmates that they have not properly completed the request for a fee waiver and (2) the doctrine of substantial compliance does not apply to the facts of this case.

In reply, Leon disagrees with Dr. Enenmoh's interpretation of Government Code section 910.8 and contends that nothing in that provision authorizes the Board to forgo providing written notice that a filing fee has not been submitted.

11.

B.   Compliance with the Government Claims Act

   1.   *Claim Presentation Requirement*

Compliance with the Government Claims Act claims presentation requirement is an essential prerequisite to maintain a suit for money damages against a public entity. (Gov. Code, § 945.4.) Government Code section 905 requires that "all claims for money or damages against local public entities" must be "presented in accordance with Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910) .…" Government Code section 910 states that "[a] claim shall be presented by the claimant or by a person acting on his or her behalf" and specifies the information that must be included in the claim. As for timing, Government Code section 911.2, subdivision (a) provides that a claim for personal injury or wrongful death must be presented to the public entity "not later than six months after the accrual of the cause of action."

   2.   *Filing Fee*

When a personal injury claim against the State is presented to the Claims Board, the claimant is required to pay a filing fee of $25. (Gov. Code, § 905.2, subd. (c).) This filing fee requirement does not apply to inmates "who are residents in a state institution and, within 90 days prior to the date the claim is filed, have a balance of one hundred dollars ($100) or less credited to [their] trust account." (Gov. Code, § 905.2, subd. (c)(1)(C).)

A claimant who requests a waiver of the filing fee shall attach to the application (1) a signed affidavit requesting the waiver[3] and (2) verification of benefits or income and any other required financial information in support of the request for the waiver. (Gov. Code, § 905.2, subd. (c)(2).) For inmates, the required financial information is a certified copy of their trust account balance. (Gov. Code, § 905.2, subd. (c)(1)(C).)

---

[3]   The Claims Board has prepared a preprinted form of affidavit for claimants to use when requesting a waiver of the filing fee. Leon used the preprinted form.

The payment or waiver of the filing fee requirement is tied to the time given the Claims Board to determine the sufficiency, timeliness and merits of the claims. (Gov. Code, § 905.2, subd. (d).) The Claims Board's time begins when the claim is submitted with the filing fee or the fee waiver is granted. (Gov. Code, § 905.2, subd. (d)(1) & (2).) When the Claims Board denies a request for a waiver of the filing fee, the time begins when the filing fee is paid, "so long as payment is received within 10 calendar days of the mailing of the notice of the denial." (Gov. Code, § 905.2, subd. (d)(3).)

### C. Motion for Judgment on the Pleadings

#### 1. Grounds Presented in the Motion

Defendants' motion for judgment on the pleadings contended that Leon "did not pay the required filing fee when he submitted his government claim, and, as such, never presented a valid claim to the [Claims Board]." Defendants asserted that, pursuant to their request for judicial notice, they provided the trial court with records of the Claims Board that establish Leon never paid the required statutory fee. In defendants' view, Leon has not yet presented a claim to the Claims Board because he neither paid the fee nor obtained a waiver of the fee.

Defendants' motion acknowledged that the paperwork Leon submitted to the Claims Board included a waiver form, but asserted that Leon did not provide a certified copy of the statement of his inmate trust account. Defendants further asserted that because Leon failed to provide the certified copy of his account balance, his claim was not accepted by the Claims Board. Thus, defendants argue that Leon never "presented" a valid claim within the prescribed six months and is barred from suing them.

#### 2. Request for Judicial Notice

Defendants supported their motion for judgment on the pleadings by requesting judicial notice of records and files of the Claims Board pursuant to Evidence Code section 452, subdivision (c). Evidence Code section 452 list matters that courts "may"

13.

judicially notice and subdivision (c) includes official acts of the executive department of any state.

Defendants' request for judicial notice was worded oddly in two respects. First, it requested judicial notice *of the declaration* of Eric Rivera, the custodian of records of the Claims Board, rather than the documents attached to the declaration. (See *Childs v. State of California* (1983) 144 Cal.App.3d 155, 162 [the declaration of an assistant executive secretary of the State Board of Control, the Claims Board's predecessor, was not an "official act" subject to judicial notice].) Second, the request asserted that Rivera's declaration, not the attached records, showed that Leon's claim was not accepted.

### 3. Rivera's Declaration and Exhibits

The August 2012 declaration of Rivera stated that he was the duly authorized custodian of records of the Claims Board and provided the following statements about Leon's claim:

> "Exhibit 1 is a true and correct copy of the only document delivered to the [Claims Board] which references CRAIG LEON: H20628 and an incident date of FEBRUARY 27, 2011. The document, G597898, was received on JUNE 16, 2011. Exhibit 1 was not accompanied by the required $25.00 filing fee, or an affidavit or request for waiver of the filing fee as permitted by the Government Code section 911.2, subdivision (b)(2). Therefore, I am informed and believe that Exhibit 1 was not accepted by the [Claims Board] as a government claim."

Exhibit 1 to Rivera's declaration contained five pages. The three pages constituting the claim included two preprinted sheets that constitute the mandatory form for submitting claims to the Claims Board and a supplemental typewritten page that described Leon's back problems, need for pain medication, the discontinuation of his medication, and the suffering that resulted. In addition, Exhibit 1 included the Claims Board's two-page, pre-printed form entitled "AFFIDAVIT FOR WAIVER OF GOVERNMENT CLAIMS FILING FEE AND FINANCIAL INFORMATION FORM (Request for Permission to Proceed In Forma Pauperis)." Item 5 of this form stated: "If you are an inmate in a correctional facility, please attach a certified copy of your trust

14.

account balance, enter your inmate identification number below and skip to step 23." Item 23 stated: "I have attached other information that supports this application on a separate sheet." Leon marked the "No" box.

D.     Analysis of Motion and Declaration

Appellate courts independently review a trial court's order granting a motion for judgment on the pleadings. (*Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468, 515.) The challenged pleading's factual allegations are accepted as true and given a liberal construction. (*Id*. at pp. 515-516; Code Civ. Proc., § 452 [liberal construction of allegations].) In determining whether the pleading's allegations stated a cause of action, courts also may accept as true the facts that are judicially noticed. (*Mendoza v. Continental Sales Co.* (2006) 140 Cal.App.4th 1395, 1402.)

Here, defendants motion for judgment on the pleadings is dependent upon facts that defendants contend are established by their request for judicial notice of Rivera's declaration. This contention and, therefore, defendants' motion fail for a number of reasons.

First, Rivera's belief that Leon's claim form and request for a fee waiver "was not accepted by the [Claims Board] as a government claim" is not a proper matter for judicial notice. Rivera's *belief* is not an "official act" for purposes of the discretionary judicial notice authorized by Evidence Code section 452, subdivision (c).

Second, we will assume for the sake of argument that judicial notice of Rivera's belief is appropriate and that he actually held that belief. Even with these assumptions, Rivera's mere belief is insufficient to establish that the Claims Board did not accept Leon's claim. Our conclusion as to the evidentiary worth of Rivera's belief is the same as that reached by the Second Appellate District in *Sykora, supra,* 225 Cal.App.4th 1530, when it stated: "Rivera's conclusory assertion *upon information and belief* that the Board did not accept the claim is insufficient to support a factual finding on this issue." (*Id*. at p. 1535.)

15.

Third, even if this court were to assume that Leon's claim was not accepted by the Claims Board, we still would not have enough information to reach the conclusion that the Claims Board properly handled Leon's claim. In particular, Rivera's declaration provides no information about what, if anything, the Claims Board did in response to Leon's incomplete request for a waiver of the filing fee. Rivera's declaration did not state that the Board ignored Leon's request for a waiver on the ground that a certified trust account balance was not included. Also, the declaration did not address whether, instead of ignoring the fee waiver request, the Claims Board denied it and, in accordance with Government Code section 905.2, subdivision (d)(3), mailed a notice of the denial to Leon. If the Claims Board sent a notice of denial, then Leon would have had 10 calendar days to send payment of the filing fee to the Claims Board.

Fourth, we will assume for the sake of argument that defendants' request for judicial notice established as uncontroverted facts that (1) the Claims Board communicated no information to Leon about his claim form or his request for a fee waiver, (2) the Claims Board took no action on Leon's claim, and (3) the reason for the Claims Board's inaction was that Leon failed to include a certification of his trust account. Even if these facts were established, they would not entitle defendants to a judgment on the pleadings. As stated by the court in *Sykora*:

> "The Board therefore has a duty to give notice of claim deficiencies involving fee requirements. If a claimant submits a deficient fee waiver application, the Board must give notice of the denial of the application and provide 10 days leave to pay the fee. (§ 911.2, subd. (b)(2), (3).) This shows a legislative intent that the filing of an otherwise timely claim without the fee is a correctible mistake for which the Board is required to give notice." (*Sykora*, *supra,* 225 Cal.App.4th at pp. 1536-1537.)

Under this interpretation of the Government Claims Act, the Claims Board could not wait until litigation to raise the deficiency in the request for fee waiver that accompanied the claim form submitted by Leon and was stamped "received" by the Claims Board on June 20, 2011.

16.

In summary, the declaration of Rivera, which suffers from deficiencies at many levels, does not establish that the Claims Board properly handled Leon's claim form and affidavit.

## DISPOSITION

The judgment of dismissal filed on August 2, 2013, is affirmed in part and reversed in part. The dismissal with prejudice of Leon's lawsuit against the State of California by and through the California Department of Corrections and Rehabilitation, California Substance Abuse Treatment Facility is affirmed. The dismissal as to Anthony Enenmoh, M.D. is reversed. On remand, the trial court shall (1) vacate its order granting the request for judicial notice of Rivera's declaration, (2) vacate its order granting judgment on the pleadings to Dr. Enenmoh, and (3) enter a new order denying the request for judicial notice and the part of the motion for judgment on the pleadings that addressed the claim against Dr. Enenmoh. Each party to bear their own costs on appeal.

_____

Franson, J.

WE CONCUR:

_____

Poochigian, Acting P.J.

_____

Peña, J.

17.